UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDRE C. BROWN,

        Plaintiff,

v.

UNKNOWN MCKAY et al.,

        Defendants.
_____/

Case No. 1:18-cv-943

Honorable Robert J. Jonker

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Bruch, Unknown Miseta, M. Black, A. Haske, T. Ball, Unknown Smiley, T. Mackie, T. Bassett, and L. Sharp. The Court will serve the complaint against Defendant Unknown McKay, but only with respect to Plaintiff's claim for retaliation under the First Amendment.

**Discussion**

I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Michigan. Plaintiff sues ECF Lieutenant Unknown McKay; Corrections Officer Unknown Bruch; Prison Counselor Unknown Miseta; Acting Classification Director M. Black; Classification Director A. Haske; Warden T. Mackie; Residential Unit Manager Unknown Smiley; Grievance Coordinator T. Basett; and Deputy Wardens T. Ball and L. Sharp.

On May 25, 2017, Plaintiff wrote a grievance against Defendant Bruch claiming that, on May 23, 2017, Bruch had threatened Plaintiff (and others). Plaintiff alleges that on May 30, 2017, Defendant McKay reviewed the grievance. McKay denied the grievance, but also, conveniently, stated to Plaintiff: "I'm going to get you for this grievance." (Compl., ECF No. 1, PageID.5.)

The next day, Defendant McKay made good on the threat. McKay wrote a major misconduct report against Plaintiff based on an incident with Defendant Bruch on May 15, 2017. Plaintiff was sent to segregation. McKay reported that, based on review of video footage, Bruch was escorting Plaintiff through a gated doorway, Plaintiff forced his way between Bruch and the gate, and, in so doing, Plaintiff made non-consensual, physical contact with Bruch. (Misconduct Report, ECF No. 1-1, PageID.17.) McKay wrote the misconduct report for assault and battery on a staff member. (*Id.*)

Bruch did not author the misconduct report, but he prepared a memorandum for the hearing investigator and hearing officer. In the memorandum, Bruch stated:

2

> On 5-15-17, I escorted Brown to Control Center to pick up legal mail. When we returned I opened the gate to HU1 and was holding the gate in my right hand. Brown forced his way between me and the gate, forcing me to drop my hand. Brown pushed through the small space, making non-consensual contact with me, pushing my arm and bumping into me. Brown did not say anything to me when he did this. I did not write the Misconduct at the time, because every time I write a Misconduct or give Brown a direct order during the course of my daily duties, Brown files a grievance on me stating that it is in retaliation for prior grievances. This incident was looked into further by Lt. MacKay when she was made aware of the situation.

(Memo., ECF No. 1-1, PageID.19.)

The hearing officer reviewed the video. (Misconduct Hearing Report, ECF No. 1-1, PageID.18.) The officer confirmed Bruch's report, but concluded the contact was incidental and did not rise to the level of assault and battery. (*Id.*) Accordingly, the officer found Plaintiff not guilty. Plaintiff characterizes Bruch's report as false, but Plaintiff does not explain in what way the report is false. Based on the hearing officer's "Reasons for Finding," upon which Plaintiff relies, Bruch's report was accurate. Nonetheless, Plaintiff contends that McKay's misconduct report and Bruch's memorandum were retaliatory for Plaintiff's May 25 filing of the grievance against Bruch.

Plaintiff claims Bruch continued to retaliate against him. On June 12, 2017, Defendant Bruch wrote a Class III misconduct report against Plaintiff because Plaintiff, who worked as a barber, failed to clean up his work area, thereby creating a health, safety, or fire hazard. (Misconduct Report, ECF No. 1-1, PageID.23.) Plaintiff alleges that he never received a guidebook and, for that reason, he was not oriented with respect to the health, safety, or fire hazard rules. Defendant Miseta found Plaintiff guilty of the misconduct based on review of the video footage. (Administrative Hearing Report, ECF No. 1-1, PageID.25.)

Plaintiff's misconduct, and a second below-average evaluation, prompted Bruch to recommend that he be terminated from his barber job. (Prisoner Program and Work Assignment

3

Evaluation, ECF No. 1-1, PageID.24.) Defendants Black and Haske followed that recommendation. (Assignment Waiver Form, ECF No. 1-1, PageID.29; Memorandum, ECF No. 1-1, PageID.30.) Because of Plaintiff "refusal/failure" to do his job, he was placed on room restriction by Defendant Haske. (*Id*.)

Defendant Bruch wrote additional Class III misconduct reports against Plaintiff on July 3, 2018 (for being in chow hall with his shirt untucked), and July 8, 2017 (for not remaining in single file in the chow hall line). (Misconduct Reports, ECF No. 1-1, PageID.33-34.)

Plaintiff attaches several grievances to his complaint. Several Defendants are named in the complaint because of their unsatisfactory responses to Plaintiff's grievances. Defendant Smiley responded to one of Plaintiff's Step I grievances on February 9, 2017, and another on June 28, 2017. (Step I Grievance Responses, ECF No. 1-1, PageID.26, 39.) Deputy Wardens Ball and Sharp reviewed Smiley's response on February 10, 2017 and July 3, 2017. (*Id*.) Warden Mackie responded to two of Plaintiff's grievances at Step II on June 21, 2017. (Grievance Appeal Forms, ECF No. 1-1, PageID.27, 31.) Plaintiff also alleges that Defendants Bassett and Mackie placed plaintiff on Modified Access status to the grievance process on June 21, 2017. (Memo., ECF No. 1-1, PageID.41.)

Finally, Plaintiff alleges that he was transferred on July 8, 2017.

Plaintiff claims that all of the Defendants' actions were retaliatory for Plaintiff's filing of grievances. Plaintiff also claims that his due process and equal protection rights were violated when he was found guilty of misconducts without ever being given a MDOC prisoner guidebook or the health, safety, and fire hazard rules. Plaintiff seeks compensatory and punitive damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

5

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's allegations implicate his First Amendment right to be free of retaliation and his due process and equal protection rights under the Fourteenth Amendment.

### III. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends that all of the Defendants took actions against him because he filed grievances. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Nonetheless, even accepting that the Defendants' actions might be sufficiently adverse to support a retaliation claim, with two exceptions, Plaintiff has failed to allege facts from which the Court might infer that the Defendants' actions were motivated by Plaintiff's filing of grievances.

The first exception is Plaintiff's retaliation claim against Defendant McKay.

According to Plaintiff, as Defendant McKay reviewed Plaintiff's grievance against Defendant Bruch, she stated: "I'm going to get you for this grievance." (Compl., ECF No. 1, PageID.5.) The next day, Defendant McKay filed a "false" misconduct report against Plaintiff. The Sixth Circuit has concluded that the consequences that might result from such a report constitute adverse action. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). Thus, Plaintiff has adequately alleged a First Amendment retaliation claim against Defendant McKay: Plaintiff has alleged protected conduct, adverse action, and facts indicating that the adverse action was motivated by the protected conduct.

The second exception is Plaintiff's retaliation claim against Defendants Mackie and Bassett for placing Plaintiff on modified access. There can be little question that Plaintiff's placement on modified access was motivated by his filing of grievances. Nonetheless, Plaintiff's allegations do not state a retaliation claim because the Sixth Circuit has concluded that placement on modified access to the grievance system is not adverse action. *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001).

With respect to the remainder of Plaintiff's retaliation claims, however, he has failed to show that the Defendants' adverse actions were motivated by Plaintiff's protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened

7

pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed some grievances within a few days, weeks or months before Defendants' actions, their actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). With the exception of the claims outlined above, Plaintiff's allegations reveal nothing more than some temporal proximity between Defendants' conduct and his many grievances. Such allegations are insufficient to state a retaliation claim.

IV.     Due Process

Plaintiff claims that the Class III misconduct proceedings against him violated his due process rights because he was never given a MDOC prisoner guidebook. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Under Michigan Department of Corrections Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105 ¶ AAAA). Therefore, Plaintiff would not have been denied good time or disciplinary credits as a result of his Class III misconduct convictions. A minor misconduct conviction does not implicate the due process clause. Accordingly, Plaintiff has failed to state a claim for violation of his due process rights.

Plaintiff also notes that failure to provide him with the guidebook violates MDOC policy. Defendants' alleged failure to comply with an administrative rule or policy does not itself

9

rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

V. Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Although Plaintiff alleges that Defendants treated him poorly, he does not allege that he was treated differently than others who were similarly situated. Absent such allegations of disparate treatment, Plaintiff has failed to state an equal protection claim.

10

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bruch, Miseta, Black, Haske, Ball, Smiley, Mackie, Bassett, and Sharp will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant McKay, but only with respect to Plaintiff's claim for retaliation under the First Amendment.

An order consistent with this opinion will be entered.


Dated: __September 26, 2018__   /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE